UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

GERMAN ROMAN-OLIVER,

    Petitioner,

v.

WARDEN JOYNER,

    Respondent.

No. 7:19-CV-50-REW

OPINION & ORDER

\*\*\* \*\*\* \*\*\* \*\*\*

*Pro se* Petitioner German Roman-Oliver—a federal inmate—seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See* DE 1. Roman-Oliver alleges that a Southern District of Ohio District Court impermissibly enhanced his sentence based on conduct underlying charges for which Roman-Oliver was acquitted. *See id.* at 9. The Court conducts an initial review under 28 U.S.C. § 2243. For the following reasons and under the applicable standards, the Court **DENIES** the petition.[1]

---

[1] *See Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011). A petition will be denied "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases (applicable to § 2241 petitions pursuant to Rule 1(b)). The Court evaluates *pro se* petitions under a more lenient standard. *See Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007); *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (noting that "allegations of a pro se habeas petition, though vague and conclusory, are entitled to a liberal construction" including "active interpretation" toward encompassing "any allegation stating federal relief" (citations and internal quotation marks omitted)). However, "[l]iberal construction does not require a court to conjure allegations on a litigant's behalf." *Erwin v. Edwards*, 22 F. App'x. 579, 580 (6th Cir. 2001). And, "under § 2243 it is the duty of the court to screen out frivolous applications[.]" Advisory Committee Notes to Rule 4, Rules Governing § 2254 Cases; *see also Neitzke v. Williams*, 109 S. Ct. 1827, 1831–32 (1989) (describing as "frivolous[,]" claims lacking "an arguable basis either in law or in fact").

1

# I.

In 2011, a Southern District of Ohio grand jury returned a superseding indictment charging Roman-Oliver with various violations of the Controlled Substances Act,[2] including: conspiring to both distribute 5+ kilograms of cocaine and to possess 500+ grams of cocaine with distributive intent (Count One); knowingly and intentionally distributing 500+ grams of cocaine (Count Two); and separately conspiring to distribute 5+ kilograms of cocaine (Count Three). *United States v. German Roman-Oliver*, Case No. 2:11-cr-69-EAS-NMK-1 (S.D. Ohio) (hereinafter *Roman-Oliver I*), ECF No. 32.

Roman-Oliver proceeded to trial. Ultimately, a jury convicted Petitioner of a lesser included offense of Count One, conspiring to distribute 500+ grams of cocaine, and acquitted Roman-Oliver of the Count Two and Three charges. *See id*. at ECF Nos. 101 (Verdict Form).[3] In March 2012, the trial court imposed a 192-month sentence. *Id*. at ECF No. 120 (Judgment).

Roman-Oliver appealed his sentence. *Id.* at ECF No. 127 (Notice). Before the Sixth Circuit, among other arguments, Roman-Oliver challenged the District Court's consideration of acquitted conduct in calculating the proper Guidelines range. *United States v. Roman-Oliver*, 564 F. App'x 156, 166–67 (6th Cir. 2014) (hereinafter *Roman-Oliver II*). The Circuit, rejecting the argument as meritless, explained: "[T]his Court's *en banc* opinion in *United States v. White* clearly decided this issue: 'The Sixth Amendment does not prevent a district court from relying on acquitted conduct in applying an *advisory* guidelines system.'" *Id*. at 166–67 (quoting 551 F.3d 381, 384 (6th Cir. 2008)) (alterations omitted) (emphasis in original).

---

[2] Specifically, violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(B) and 846.
[3] Before trial, the District Court, at the Government's request, struck Count One's reference to possession with distributive intent as a conspiracy object. *Id*. at ECF No. 60. Thus, Roman-Oliver was tried and convicted on Count One as to a distribution-only conspiracy. *Id*.

Roman-Oliver also argued that *Alleyne v. United States*, 133 S. Ct. 2151 (2013) prohibited the sentencing court from relying on conduct not proven to a jury beyond a reasonable doubt. *Id*. at 167. The Circuit rejected the additional theory:

> In *Alleyne,* the Court held that "any fact that increases the mandatory minimum is an 'element' of the crime that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne*, 570 U.S. at 103. Unfortunately for Petitioner, *Alleyne* does not apply to this case. The district court did not apply a mandatory minimum when it determined Petitioner's sentence. In fact, no mandatory minimum was ever at issue in this case. Instead, the district court determined a Guidelines range, which is not mandatory, and then used its discretion to vary downward. *Alleyne* does not stand for the proposition that any conduct used to determine a sentence must be proved beyond a reasonable doubt.

*Id*. at 167 (alterations and footnote omitted). Finally, Roman-Oliver contended that the trial court erroneously considered conduct not actually proven by a preponderance of the evidence in determining Petitioner's relevant conduct. *Id*. The Circuit, unconvinced, found that the record preponderantly supported the District Court's drug-quantity calculation. *Id*. at 167–68. The Court affirmed the sentence.

Ten months later, in February 2015, Roman-Oliver filed a § 2255 motion alleging that trial counsel ineffectively failed to advise him of two plea offers. *Roman-Oliver I*, at ECF No. 154. The trial judge adopted a recommendation to deny the motion, *id.* at ECF Nos. 162 (R. & R.) & 164 (Order), and rejected Roman-Oliver's request for reconsideration, *id.* at ECF No. 167 (Op. & Order). Both the District Court and the Sixth Circuit denied Petitioner's requests for a certificate of appealability. *Id*. at ECF Nos. 169 & 171.

Now before this Court, via § 2241, Roman-Oliver argues, again, that the trial court erroneously relied on acquitted conduct in calculating the Guidelines range. *See generally* DE 1. Petitioner contends that the Supreme Court's decision in *United States v. Haymond*, 139 S. Ct. 2369 (2019), "sheds new light" on consideration of acquitted conduct and shows that the

sentencing process violated his Fifth and Sixth Amendment rights. *Id.* at 9–10. The Court, upon thorough review and for the following reasons, finds that Roman-Oliver plainly is not entitled to relief.

## II.

*First*—Critically, Roman-Oliver's claim is not properly cognizable under § 2241. For sentencing challenges, this is the general rule. *See United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001). Section 2255 is the proper vehicle for collaterally attacking detention legality; § 2241, rather, is reserved "for claims challenging the execution or manner in which the sentence is served[,]" such as those involving sentence credit computation issues. *Id.* Foundationally, a § 2241 petition does not function as an additional or alternative remedy to the one available under § 2255, a route Roman-Oliver already travelled. *Hernandez v. Lamanna*, 16 F. App'x 317, 320 (6th Cir. 2001).

Section 2255(e)'s so-called "savings clause"[4] provides an—extraordinarily narrow— exception to this rule. A § 2241 petitioner may invoke the savings clause by showing that the § 2255 remedy is "inadequate and ineffective to test the legality of [ ] detention[.]" 28 U.S.C. § 2255(e); *Martin v. Perez*, 319 F.3d 799, 803 (6th Cir. 2003) (The petitioner faces the § 2255(e) burden.). A prisoner does not clear the § 2255(e) hurdle simply because he failed to file (or timely

---

[4] Courts alternatively refer to this clause type as either a *savings* clause or a *saving* clause. *Compare Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1886 (2019) ("the FLSA saving clause"), *and Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 896 (6th Cir. 2019) (the FAA's "saving clause"), *with Wooten v. Cauley*, 677 F.3d 303, 306 (6th Cir. 2012) (§ 2255(e) "savings clause"). The terms are, practically, interchangeable. *See Saving Clause*, Black's Law Dictionary (11th ed. 2019); *Savings Clause*, Black's Law Dictionary (11th ed. 2019). Without expressing any particular preference, the Court here uses the "savings clause" variant, more common in the § 2255(e) jurisprudence. *See, e.g.*, *Hill v. Masters*, 836 F.3d 591, 594 (6th Cir. 2016); *Harrington v. Ormond*, 900 F.3d 246, 249 (6th Cir. 2018); *Hayes v. Holland*, 473 F. App'x 501, 501–02 (6th Cir. 2012). *But see Wright v. Spaulding*, 939 F.3d 695, 697 (6th Cir. 2019).

file) a § 2255 motion or because a previous motion yielded no relief. *See Copeland v. Hemingway*, 36 F. App'x 793, 795 (6th Cir. 2002); *Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002) (holding that § 2241 is available "only when a structural problem in § 2255 forecloses even one round of effective collateral review"). In other words, § 2241 does not provide prisoners another "bite at the apple." *Hernandez*, 16 F. App'x at 360.

These § 2241 and savings clause limits have, historically, applied with special vigor to sentencing challenges. *Peterman*, 249 F.3d at 462; *Hayes*, 473 F. App'x at 502 ("The savings clause . . . does not apply to sentencing claims."). However, the Sixth Circuit (like several others) has permitted such claims to proceed through § 2255(e) where a new Supreme Court decision—*i.e.*, one issued after the petitioner exhausted his direct appeal and initial § 2255 motion opportunities—clears a path through binding precedent, thus opening the door to an argument previously unavailable to the petitioner. *See Wright*, 939 F.3d at 703 (discussing *Martin*, 319 F.3d at 804–05) ("[I]n this circuit, a federal prisoner who has already filed a § 2255 motion and cannot file another one cannot access § 2241 just because a new Supreme Court case hints his conviction or sentence may be defective . . . [T]he prisoner must also show that binding adverse precedent (or some greater obstacle) left him with no reasonable opportunity to make his argument earlier, either when he" appealed his conviction or initially sought § 2255 relief.) (emphases, quotation marks, and citations omitted); *accord Hill*, 836 F.3d at 595 (permitting a "petition under § 2241 based on a misapplied sentence" where, among other things, petitioner's argument for relief hinged on a

retroactive "case of statutory interpretation" that "could not have been invoked in [his] initial § 2255 motion").[5]

Roman-Oliver, seeking passage through the savings clause gateway, points to 2019's *United States v. Haymond. See* DE 1-1 at 7, 9. Yet, Petitioner fails to convincingly link the substance of his current claim—that the trial court erroneously relied on acquitted conduct (*id.* at 9)—to any *Haymond* holding. Roman-Oliver, here, offers no argument that, *e.g.*, the Ohio District Court erroneously relied on judge-found facts in imposing a "mandatory minimum prison term." *Haymond*, 139 S. Ct. at 2386 ("[I]n an ordinary criminal prosecution, a jury must find facts that trigger a mandatory minimum prison term.") (Breyer, J., concurring). Indeed, as the Sixth Circuit has already found, "no mandatory minimum was ever at issue in [Roman-Oliver's] case." *Roman-Oliver II*, 564 F. App'x at 167.[6] The *Haymond* Court addressed a narrow, discrete aspect of

---

[5] *Hill* offers two (substantially similar, but not identical) three-part tests for analyzing whether a sentencing challenger can access § 2241 through the savings clause. *Compare* 836 F.3d at 595 (requiring "(1) a case of statutory interpretation, (2) that is retroactive and could not have been invoked in the initial § 2255 motion" and (3) a showing that the sentencing error results in a "miscarriage of justice or a fundamental defect"), *with id.* at 599–600 (emphasizing that *Hill* pertains only to petitions from prisoners (1) sentenced under the mandatory guidelines regime, (2) who "are foreclosed from filing a successive petition under § 2255," and (3) who seek relief based on "a subsequent, retroactive change in statutory interpretation by the Supreme Court"). Later courts and litigants have grappled with reconciling these tests and discerning the intended elemental analysis. *See, e.g.*, *Neuman v. United States*, No. 17-6100, 2018 WL 4520483, at *2 n.1 (6th Cir. May 21, 2018), *cert. denied*, 139 S. Ct. 443 (2018); *Wright*, 939 F.3d at 703 (noting that the parties "debate which of the two similar, but differently worded, three-part [*Hill*] tests" apply). The Court need not plunge into the murky *Hill*-test waters here—or even apply *Hill*'s fundamental defect analysis—however, because Roman-Oliver fatally falters at the "no reasonable opportunity" threshold. *See Wright*, 939 F.3d at 705 ("[A] federal prisoner cannot bring a claim of actual innocence in a § 2241 petition through the savings clause without showing that he had no prior reasonable opportunity to bring his argument for relief.").

[6] Given the § 841(b)(1)(B) conviction, the Court takes the Circuit's statement as referencing the fact that Petitioner's Guidelines range was sufficiently elevated to render the mandatory 5-year floor moot at sentencing. In any event, the jury's verdict unquestionably authorized a statutory sentencing range of 5 to 40 years of imprisonment. *See* 21 U.S.C. § 841(b)(1)(B). Roman-Oliver's 192-month sentence properly fell between the jury-based statutory floor and ceiling.

punishment for supervised release violations. *See United States v. Aguirre*, 776 F. App'x 866, 867 (5th Cir. 2019) ("[T]he *Haymond* plurality emphasized that its decision was limited to § 3583(k) and its mandatory minimum provision."). Nothing in *Haymond* suggests any consideration of the propriety of a sentencing court's consideration of acquitted conduct. Rather, the *Haymond* Court explicitly clarified that "[a]s at the initial sentencing hearing, . . . a jury [need not] find every fact . . . that may affect the judge's exercise of discretion within the range of punishments authorized by the jury's verdict." *Haymond*, 139 S. Ct. at 2380. Thus, *Haymond* does not pertain and gives Roman-Oliver no ticket through the savings clause portal.

Ultimately, Roman-Oliver's theory rests foundationally on *Alleyne* and/or *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000), and *Haymond* offers no novel gloss. That is, *Haymond* did not, in any sense, make a relevant "*new legal argument*" available to Roman-Oliver. *Wright*, 939 F.3d at 705 (emphasis in original); *cf. Gardner v. United States*, No. 1:09CR063MRWCM1, 2019 WL 6125942, at *3 (W.D.N.C. Nov. 18, 2019) ("Petitioner did not face a new mandatory minimum sentence on revocation, which was the entire basis of the holding in *Haymond*."). Petitioner had an unimpeded opportunity to present the *Alleyne/Apprendi* argument in his § 2255 motion. Roman-Oliver in fact launched this variety of attack on direct appeal (nearly more than a year **before** his § 2255 filing). *See Roman-Oliver II*, 564 F. App'x at 166–67. Petitioner's decision to omit the argument from his initial § 2255 does not render that remedy ineffective. Put differently, the fact that Roman-Oliver "failed to seize" the opportunity to present his current theory does not mean that he can "now use [§ 2255(e)] to get another bite at the apple." *Wright*, 939 F.3d at 706.

Because the *Alleyne/Apprendi* theory was available when Roman-Oliver filed his § 2255, Petitioner, to have any hope of savings clause passage, needed to show that *Haymond*[7] blazed a previously unavailable legal theory undergirding the current claim. *Wright*, 939 F.3d at 705 ("A new case matters only, if at all, because of the *new legal arguments* it makes available."). Petitioner presents no such showing. Roman-Oliver fails to establish that § 2255 "was 'inadequate or ineffective' to test his sentence." *Id.* at 706 (quoting 28 U.S.C. § 2255(e)). This, alone, dooms the petition. *Purnell v. United States*, 496 F. App'x 596, 601 (6th Cir. 2012) ("[L]iberal construction of a pro se petitioner's pleadings does not require a court to conjure allegations on a litigant's behalf[.]" (quoting *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004))).

*Second*—Of course, Roman-Oliver is no incarcerated innocent. Since 1997, the Supreme Court's position has been that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *United States v. Watts*, 117 S. Ct. 633, 636 (1997). The *en banc* Sixth Circuit, tracking *Watts* and its "sister circuits[,]" confirmed that a "district court does not abridge the defendant's right to a jury trial by looking to other facts, including acquitted conduct, when selecting a sentence within" the statutorily authorized range. *White*, 551 F.3d at

---

[7] Petitioner's desultory reference to *Nelson v. Colorado*, 137 S. Ct. 1249 (2017) does not impact the savings clause analysis. *Nelson* merely applied a long-standing legal principle. *Martin v. United States*, No. CR RDB-04-0029, 2018 WL 1626578, at *2 (D. Md. Apr. 4, 2018) ("Contrary to Martin's assertions, the presumption of innocence is not a newly announced substantive rule of law."). Roman-Oliver could have fashioned a *Nelson*-centric sentencing attack in his original § 2255 motion. Thus, the Supreme Court's subsequent application of the innocence presumption offers no indication that the argument was "unavailable" to Petitioner in any savings-clause-relevant sense. *Nelson* does not pertain. That case evaluated a state's right to hold fines or fees tied to wholly invalidated convictions. *See Nelson*, 137 S. Ct. at 1256 ("Colorado may not retain funds taken from Nelson and Madden solely because of their now-invalidated convictions[.]"). *Nelson* involved defendants "adjudged guilty of no crime," *id.*; a jury convicted Roman-Oliver of aggravated coke trafficking, and the judge sentenced him within the limits authorized by that verdict.

385.[8] The Circuit, post-*Apprendi* and *Alleyne*, relied on *White* to reject the attack on acquitted conduct consideration that Roman-Oliver now again attempts. *Roman-Oliver II*, 564 F. App'x at 166–67. Contrary to Roman-Oliver's take, *Haymond* did not question the persisting validity of (indeed, did not even reference) and certainly did not overrule *Watts* or any other prior precedent regarding consideration of acquitted conduct for sentencing purposes. *See generally* 139 S. Ct. 2369. The Supreme Court "does not discard longstanding precedent" *sub silentio*; rather, "if the Court . . . were intent on overruling [*Watts*], it surely would have said so directly, rather than act in such an ambiguous manner." *Carmell v. Texas*, 120 S. Ct. 1620, 1636 (2000); *Rayner v. Mills*, 685 F.3d 631, 639 n.6 (6th Cir. 2012) (same); *see also, e.g., Steel Co. v. Citizens for a Better Environment*, 118 S. Ct. 1003, 1014 (1998) ("[T]his peculiar case . . . was not meant to overrule, *sub silentio*, [prior] jurisprudence[.]").[9]

---

[8] Put differently:
> Because the federal sentencing guidelines are advisory, rather than mandatory, *see Peugh*, 133 S. Ct. at 2080 (citing *United States v. Booker*, 543 U.S. 220, 259–260, 264, 125 S. Ct. 738, 160 L.Ed.2d 621 (2005)), judicial factfinding that affects the guidelines calculation does not fit within the category of facts required under *Alleyne* to be found by a jury beyond a reasonable doubt.

*Rogers v. United States*, 561 F. App'x 440, 444 (6th Cir. 2014). "This point . . . enjoys unanimity among the courts of appeals." *White*, 551 F.3d at 384.

[9] As to any *Nelson* spin:
> Even if *Nelson* could be read to somehow undermine the reasoning of *Watts*, it is the Supreme Court's prerogative, alone, to overrule one of its precedents. *Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016). The Supreme Court has been quite clear that its "decisions remain binding precedent until [it] see[s] fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality." *Id.* Because *Nelson* obviously does not expressly invalidate *Watts*, this Court must follow *Watts* until the Supreme Court says otherwise.

*United States v. Tegeler*, No. 4:14-CR-3091, 2018 WL 1954200, at *3 (D. Neb. Apr. 16, 2018); *see also United States v. Johnson*, No. 16-4146, 2018 WL 1876018, at *17 n.19 (10th Cir. Apr. 19, 2018) ("But *Nelson* doesn't even mention *Watts*. And the Supreme Court doesn't typically 'overturn . . . earlier authority *sub silentio*.' *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 . . . (2000). We see no reason to presume that it did so here.").

Thus, *White* binds this Court and renders "Petitioner's argument [ ] meritless." *Roman-Oliver II*, 564 F. App'x at 167; *see also United States v. Rios*, 830 F.3d 403, 440 (6th Cir. 2016) ("[I]n determining relevant conduct, a court may consider a broad range of information, including uncharged crimes, crimes where charges have been dismissed, and crimes for which the defendant has been acquitted." (citation omitted)). Roman-Oliver has not, here, shown in any way that his enhanced sentence is a veritable miscarriage of justice.

For these reasons, and under the applicable standards, the Court **ORDERS** as follows:

1. The Court **DENIES** DE 1; and

2. The Court will enter a separate Judgment.

This 9th day of December, 2019.

Signed By:
Robert E. Wier *REW*
United States District Judge